**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HOWARD RACHELSON, | ) | |
| on behalf of plaintiff and the class members | ) | |
| described herein, | ) | |
| | ) | |
| Plaintiff, | ) | 20-cv-2178 |
| | ) | |
| vs. | ) | |
| | ) | |
| ZENRESOLVE, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT  – CLASS ACTION**

**INTRODUCTION**

1.      Plaintiff Howard Rachelson brings this action to secure redress from unlawful

credit and collection practices engaged in by Defendant ZenResolve, LLC.   Plaintiff alleges

violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et seq. ("FDCPA").

2.      The FDCPA broadly prohibits unfair or unconscionable collection methods,

conduct which harasses or abuses any debtor, and the use of any false or deceptive statements in

connection with debt collection attempts. It also requires debt collectors to give debtors certain

information. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

3.      In enacting the FDCPA, Congress found that: "[t]here is abundant evidence of

the use of abusive, deceptive, and unfair debt collection practices by many debt collectors.

Abusive debt collection practices contribute to the number of personal bankruptcies, to marital

instability, to the loss of jobs, and to invasions of individual privacy."  15 U.S.C. §1692(a).

4.      Because of this, courts have held that "the FDCPA's legislative intent

-1-

emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct." and that "[t]his intent cannot be underestimated." *Ramirez v. Apex Financial Management LLC*, 567 F.Supp.2d 1035, 1042 (N.D.Ill. 2008).

5.      The FDCPA encourages consumers to act as "private attorneys general" to enforce the public policies and protect the civil rights expressed therein. *Crabill v. Trans Union, LLC*, 259 F.3d 662, 666 (7th Cir. 2001).

6.      Plaintiff seeks to enforce those policies and civil rights which are expressed through the FDCPA, 15 U.S.C. §1692 *et seq*.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction under 15 U.S.C. §1692k (FDCPA), 28 U.S.C. §1331, 28 U.S.C. §1337 and 28 U.S.C. §1367.

8.      Venue and personal jurisdiction in this District are proper because:

   1.      Defendant's collection communications were received by Plaintiff within this District;

   2.      Defendant does or transacts business within this District.

## PARTIES

9.      Plaintiff is a resident of the Northern District of Illinois.

10.      Defendant ZenResolve, LLC is a limited liability company organized under Wyoming law  with principal offices at 4720 E. Cotton Gin Loop, Suite 135, Phoenix, AZ 85040.   It does business in Illinois. Its registered agent and office is CT Corporation System, 208 S. LaSalle St., Suite 814, Chicago, IL 60604.

11.      Defendant has a web site on which it states: "ZenResolve is a third-party

collections company. Other companies contract with us to collect outstanding debts on their behalf."

12.     Defendant ZenResolve, LLC holds a collection agency license from the Illinois Department of Financial and Professional Regulation.

13.     Defendant uses the mails and interstate wire communications to collect consumer debts allegedly owed to others.

14.     Defendant is a debt collector as defined by the FDCPA.

## **FACTS**

15.     Defendant has been attempting to collect from Plaintiff high-interest Internet loans allegedly owed to "Little Lake Lending" and "Lendumo (formerly Amplify)".

16.     The loans were made via the Internet to Plaintiff while Plaintiff was located in Illinois, where he resided.

17.     The loans were obtained for personal, family or household purposes and not for business purposes.

18.     On January 27, 2020, Defendant sent Plaintiff the email attached as Appendix A, seeking to collect the Lendumo/ Amplify debt.

19.     On January 31, 2020, Defendant sent Plaintiff the email attached as Appendix B, seeking to collect the Little Lake Lending debt.

20.     On February 14, 2020, Defendant sent Plaintiff the email attached as Appendix C, seeking to collect the Little Lake Lending debt.

21.     On February 24, 2020, Defendant sent Plaintiff the email attached as Appendix D, seeking to collect the Lendumo/ Amplify debt.

22.     On February 24, 2020, Defendant sent Plaintiff the email attached as Appendix E,

-3-

seeking to collect the Little Lake Lending debt.

23.     On March 3, 2020, Defendant sent Plaintiff the email attached as Appendix F, seeking to collect the Little Lake Lending debt.

24.     On March 3, 2020, Defendant sent Plaintiff the email attached as Appendix G, seeking to collect the Lendumo/ Amplify debt.

25.     Each of these communications represents that there is an "outstanding balance," and seeks to invite settlement.

26.     Such a communications  represents or implies that the debt is valid and legally enforceable.  *McMahon v. LVNV Funding, LLC*, 744 F.3d 1010 (7th Cir. 2014).

27.     Both Little Lake Lending and Lendumo/ Amplify make high-interest loans over the Internet at rates in excess of 100%.

28.     Neither Little Lake Lending nor Lendumo/ Amplify have ever had a license from the Illinois Department of Financial and Professional Regulation or a state or federal banking or credit union charter, entitling it to make loans to Illinois residents at more than 9% interest.

29.     Little Lake Lending and Lendumo/ Amplify  nevertheless advertise and make loans to Illinois residents at rates greatly exceeding 9%.

30.     Defendant ZenResolve, LLC engages in a practice of attempting to collect high-interest loans  (greatly in excess of 9%) obtained by Illinois residents in Illinois over the Internet from unlicensed lenders, including but not limited to Little Lake Lending and Lendumo/ Amplify.

31.     The lenders sought out Illinois residents for such loans.

32.     The lenders were never licensed to make loans by the Illinois Department of

-4-

Financial and Professional Regulation.

33.     The lenders did not have a bank or credit union charter that would authorize them to lend to Illinois residents at over 9%.

34.     All loans made by the lenders were made at an annual percentage rate exceeding the 9% which a non-bank lender which does not have a license from the Illinois Department of Financial and Professional Regulation may charge for a loan made to an Illinois resident.

35.     Illinois law permits four types of non-real-estate secured consumer loans at over 9%: payday loans, installment payday loans, regular consumer installment loans, and small consumer loans.   All four types require a license from the Illinois Department of Financial and Professional Regulation or a bank or credit union charter.

36.     A payday loan is a loan with an APR exceeding 36% and a term that does not exceed 120 days, including any transaction conducted via any medium whatsoever, including, but not limited to, paper, facsimile, Internet, or telephone, in which the lender receives a check, an authorization to debit a consumer's bank account, or a wage assignment or other interest in a consumer's wages.  815 ILCS 122/1-10.  Any lender that offers or makes a payday loan to a consumer in Illinois must do so in compliance with the Payday Loan Reform Act.  815 ILCS 122/1-15.

37.     An "installment payday loan" is a loan over 36% with a term of 112 to 180 days made to a consumer in Illinois via any medium whatsoever, including, but not limited to, paper, facsimile, Internet, or telephone, in which the lender receives a check, an authorization to debit a consumer's bank account, or a wage assignment or other interest in a consumer's wages.  815 ILCS 122/2-5(c).  It must also be made in compliance with the Payday Loan Reform Act.

38.     The Payday Loan Reform Act imposes a rate cap (just over 400%) and numerous

-5-

other limitations, such as limits on the amount of the loans, limits on the number of loans, and limits on the percentage of a consumer's income that the payments consume.

39.     The Payday Loan Reform Act also makes it unlawful (815 ILCS 122/4-5) for either a licensee or an unlicensed person or entity making payday loans:

1.     To use any device or agreement that would have the effect of charging or collecting more fees or charges than allowed by this Act, including, but not limited to, entering into a different type of transaction with the consumer.

2.     Charging for, or attempting to collect, attorney's fees, court costs, or arbitration costs incurred in connection with the collection of a payday loan.

3.     Making a loan in violation of this Act.

40.     The Consumer Installment Loan Act (205 ILCS 670/1 et seq.) regulates consumer loans to Illinois residents not covered by the Payday Loan Reform Act in a principal amount not exceeding $40,000.  It authorizes two types of loans:

1.     Installment loans, on which rates are limited to 36% (205 ILCS 670/15);

2.     Small consumer loans, for amounts up to $4,000 and terms in excess of 180 days, on which 99% and an acquisition fee may be charged for the term of the loan and 18% thereafter until paid (205 ILCS 670/15(b), 205 ILCS 670/17.2, 205 ILCS 670/15(f)(7)).  There are again restrictions based on the consumer's income and other matters.

41.     Consumer loans which are not made by a licensed lender, bank or credit union are limited to 9%.

42.     Any loans to Illinois residents which meet the statutory definitions and are made by unlicensed persons are void and unenforceable and felonious:

1.      The Consumer Installment Loan Act provides, at 205 ILCS 670/20(d), that if any person who does not have a license issued under this Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the person who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan."

2.      The Payday Loan Reform Act provides, at 815 ILCS 122/4-10(h), that "if a lender who does not have a license issued under this Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the lender who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan."

3.      The Consumer Installment Loan Act makes it a felony to engage in the business of making loans covered by the Act without a license. (205 ILCS 670/20(a))

4.      The Illinois criminal usury statute defines the making of a loan by unlicensed persons at more than 20% interest as a felony. 720 ILCS 5/17-59 (formerly 720 ILCS 5/39-1 et seq) It applies to a person who "while either within or outside the State, by his own conduct or that of another for which he is legally accountable," engages in conduct that amounts to an offense if "the offense is committed either wholly or partly within the State". 720 ILCS 5/1-5.

-7-

43.     All of the loans made by the lenders described in this case were at more than 20% interest.  Indeed, on information and belief all were made at more than 100%.

44.     Consumers may not waive the protections of these Illinois laws by contract.  The Payday Loan Reform Act provides (815 ILCS 122/4-40) that there shall be no waiver of any provision of this Act.  Contracts made in violation of licensing requirements intended to protect the public, or in violation of criminal laws imposing substantial penalties, are void. *Chatham Foot Specialists, P.C. v. Health Care Serv. Corp.*, 216 Ill. 2d 366, 380, 837 N.E.2d 48 (2005). Neither choice of law clauses or other contractual devices can be used to avoid invalidation of loans made at criminally usurious rates.  *Madden v. Midland Funding, LLC,* 237 F.Supp.3d 130, 149-50 (S.D.N.Y.  2017) ("That New York chose to criminalize such conduct is further evidence that its usury prohibition is a fundamental public policy."); *MacDonald v. CashCall, Inc.,* 16cv2781, 2017 WL 1536427, *7 (D.N.J., April 28, 2017).  A criminal law may not "be bypassed by the mere existence of a choice of law provision contained in a contract."  *Electrical & Magneto Serv. Co. v. AMBAC Int'l Corp.*, 941 F.2d 660, 663 (8th Cir. 1991).

45.     All such loans are made for personal, family or household purposes.  Businesses do not borrow money at over 450% interest.

46.     By demanding payment and offering a settlement,  ZenResolve, LLC represented or implied that the debt it sought to collect was legally enforceable.

47.     Defendant ZenResolve, LLC knew or recklessly disregarded the fact that the loans it was attempting to collect were unenforceable.

48.     Even the most cursory inquiry into the legality of collecting high-interest  loans made to  Illinois residents over the Internet would have disclosed to Defendant that it was violating the law.

49.     The Illinois Department of Financial and Professional Regulation ("IDFPR") has repeatedly brought cases against unlicensed out of state lenders that make loans covered by the Consumer Installment Loan Act or Payday Loan Reform Act via the Internet or similar means to Illinois residents in Illinois.  *E.g., In the Matter of Red Leaf Ventures, LLC,* No. 12 CC 569 (https://www.idfpr.com/dfi/ccd/Discipline/RedLeafVenturesCDOrder12CC569.pdf), In the Matter of  Money Mutual, LLC, No. 12 CC 408 (https://www.idfpr.com/dfi/ccd/Discipline/ MoneyMutualCDOrder12CC408.pdf); *In the Matter of  Hammock Credit Services*, No. 12 CC 581 (https://www.idfpr.com/dfi/ccd/Discipline/HammockCreditCDOrder12CC581.pdf

50.     Since the IDFPR licenses and regulates Defendant, Defendant should have been aware that it forbade the collection of the loans at issue.

## COUNT I – FDCPA

51.     Plaintiff incorporates paragraphs 1-50.

52.     Defendant violated 15 U.S.C. §§1692e, 1692e(2), 1692e(5), 1692e(10), 1692f and 1692f(1) by engaging in the conduct set forth above.

53.     Section 1692e provides:

**False or misleading representations [Section 807 of P.L.]**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

**(2)     The false representation of–**

**(A)     the character, amount, or legal status of any debt; . . .**

**(5)     The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .**

-9-

**(10)    The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .**

54.    By representing that loans declared by Illinois law to be "null and void" were outstanding balances, and offering settlements of such purported obligations, Defendant engaged in materially deceptive and misleading collection communications.  Defendant also failed to disclose material facts necessary to make the statements made not misleading, all in violation of §1692e.

55.    Section 1692f provides:

**§ 1692f.    Unfair practices [Section 808 of P.L.]**

**A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt.   Without limiting the general application of the foregoing, the following conduct is a violation of this section:**

**(1)    The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. . . .**

56.    Under §1692f(1), "A debt collector may attempt to collect a fee or charge in addition to the debt if either (a) the charge is expressly provided for in the contract creating the debt and the charge is not prohibited by state law, or (B) the contract is silent but the charge is otherwise expressly permitted by state law. Conversely, a debt collector may not collect an additional amount if either (A) state law expressly prohibits collection of the amount or (B) the contract does not provide for collection of the amount and state law is silent."  FTC Official Staff Commentary on the Fair Debt Collection Practices Act, Statements of General Policy or Interpretation, 53 Fed. Reg. 50097, 50108 (Dec. 13, 1988).

57.    The collection or attempted collection of usurious interest violates §1692f(1).

*Madden v. Midland Funding, LLC*, 786 F.3d 246 (2d Cir. 2015); *Pollice v. National Tax Funding, L.P.*, 225 F.3d 379, 408 (3rd Cir. 2000) ("[D]efendants presumably have violated section 1692f(1) regardless of the presence of any agreement authorizing the rates of interest and penalties, because state law specifically prohibits charging interest in excess of ten percent on the assigned claims"); *Patzka v. Viterbo College*, 917 F.Supp. 654, 658 (W.D. Wisc. 1996); *Martinez v. Albuquerque Collection Services, Inc.,* 867 F. Supp. 1495, 1509 (D.N.M. 1994)(granting partial summary judgment to plaintiff, holding that debt-collector defendant falsely represented plaintiff's debt in violation of the FDCPA, by demanding compound interest that the creditor was not allowed to collect under state law).

## CLASS ALLEGATIONS

58.     Plaintiff brings this claim on behalf of a class and two subclasses, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).

59.     The class consists of (a) all individuals with Illinois addresses (b) from whom ZenResolve, LLC, sought to collect a loan (c) made at more than 9% interest (d) to an Illinois resident in Illinois (e) by an entity which did not possess a bank or credit union charter and was not licensed by the Illinois Department of Financial and Professional Regulation (f) by communicating with the consumer and/or credit reporting (g) where any such activity occurred on or after a date one year prior to the filing of this action.  Subclass 1 consists of class members where the unlicensed entity was Little Lake Lending. .  Subclass 2 consists of class members where the unlicensed entity was Lendumo/ Amplify.

60.     Similar classes have been certified in a number of prior cases.  *Jones v. National Credit Adjusters,* 10cv8027 (N.D.Ill.) (Gilbert, M.J.) (class settlement); *Couser v. National Credit Adjusters*, 1:12-cv-07593-JSR and 1:13-cv-02542-JSR (S.D.N.Y.) (class settlement);

*Paxton v. National Credit Adjusters,* 12cv6499 (N.D.Ill.) (Durkin, J., and Holderman, J.) (class settlement); *Jones v. Vohwinkel*, 10cv7954 (N.D.Ill.) (Manning, J.) (class settlement). See also *Madden v. Midland Funding, LLC,* 237 F.Supp.3d 130 (S.D.N.Y. 2017).

61. The class is so numerous that joinder of all members is not practicable. On information and belief, there are at least 40 class members.

62. The lenders can be readily identified from a list of the entities for which Defendant performed debt collection services with respect to Illinois residents, as high-interest Internet lenders are distinctive, easily identified, and do not engage in other types of transactions. The license status is available on the Internet. The class members are the individuals from which ZenResolve, LLC, collected or attempted to collect such debts. This was the method used to identify class members in the cases listed above.

63. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendant engages in a practice of attempting to collect illegal debts.

64. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

65. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and FDCPA litigation.

66. A class action is superior for the fair and efficient adjudication of this matter, in that:

    1. Individual actions are not economically feasible.

2.      Members of the class are likely to be unaware of their rights.  Indeed, no one would pay a void loan except through fraud or duress.

3.      Congress intended class actions to be the principal enforcement mechanism under the FDCPA.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendant for:

i.      Statutory damages;

ii.      Actual damages including all amounts collected by Defendant from members of the class;

iii.      Attorneys' fees, litigation expenses and costs of suit; and

iv.      Such other and further relief as the Court deems proper.


s/Daniel A. Edelman
Daniel A. Edelman


Daniel A. Edelman
Cathleen M. Combs
Tara L. Goodwin
David S. Kim
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 South Clark Street, Suite 1500
Chicago, IL 60603-1824
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
EDELMAN COMBS LATTURNER
        & GOODWIN, LLC
20 S. Clark St., Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 739-0379

-14-